IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

FEB 19 2026

Nathan Ochsner, Clerk of Court

| | |
|---|---|
| COSBY SIRINGI § | |
| § | |
| Plaintiff, § | |
| § | Case No. 4:26-cv-00509 |
| v. § | |
| § | Hon Kieth P. Ellison |
| VS MEDIA, INC., § | |
| § | |
| Defendants. § | |

## SUPPLEMENTAL DECLARATION OF COSBY SIRINGI

In Support of Plaintiff's Motion for Leave to Conduct Early Limited Discovery

**Purpose of This Supplemental Declaration**

1. This declaration supplements Plaintiff's previously filed Motion for Leave to Conduct Early, Limited Discovery.

2. Since filing the original motion, I have further reviewed preserved materials and redirect recordings documenting the path from unsolicited SMS messages to a VS Media–controlled endpoint.

- 1 -

3. This supplemental declaration clarifies the commercial routing structure reflected in that recording and explains why early discovery is necessary to identify the responsible sender and preserve time-sensitive records.

**Preserved Redirect Recording (April 16, 2022)**

4. On April 16, 2022, I recorded a real-time screen capture documenting the redirect sequence triggered by clicking one of the unsolicited SMS messages at issue.

5. The recording reflects the following sequence:

    o   Initial SMS link (including 18andover.la routing step)

    o   Redirect to meetkissme.com

    o   Redirect cycling between meetkissme.com and searchingforsingles.com

    o   Redirect through superglobaloffer.com

    o   Redirect to mensexclub.com

    o   Redirect to myhornysingles.com

  - Advertising/traffic routing through moartraffic.engine.adglare.net

  - Final landing at entrance.mylivestripclub.com

6. The endpoint mylivestripclub.com is operated and controlled by VS Media, Inc.

7. The recording reflects a continuous commercial funnel from the unsolicited SMS to a VS Media–controlled platform.

8. The preserved browser history also reflects redirect URLs containing structured campaign parameters, including numeric tracking identifiers and affiliate account fields embedded within "go.moartraffic.com/go.php" links. These identifiers demonstrate that the redirect was part of a managed affiliate or advertising campaign. The identity of the affiliate account and campaign configuration associated with those identifiers is not publicly accessible and is exclusively within the control of the advertising intermediary and/or Defendant.

9. I have preserved this recording and can provide it to the Court or to Defendant upon request.

**MoarTraffic Routing Layer**

10. During the recorded redirect sequence, the path routes through moartraffic.engine.adglare.net prior to reaching the VS Media endpoint.

11. MoarTraffic has publicly represented that it operates or owns brands including WellHello and Badoink.

12. The redirect environment reached through the SMS includes properties associated with that same ecosystem.

13. This demonstrates that the SMS traffic does not resolve to random webpages but instead enters a structured commercial traffic system.

**WellHello Ecosystem Continuity**

14. WellHello has appeared repeatedly in the redirect paths and landing environments associated with the messages at issue.

15. VS Media publicly operates WellHelloLive.com, which functions as a live/white-label version within that ecosystem.

16. The redirect funnel documented in the preserved recording routes traffic through properties associated with that interconnected commercial structure before terminating at

a VS Media–controlled endpoint.

17. Public branding and affiliate materials reflect that these platforms operate within affiliate and referral-based traffic systems.

18. Internal campaign identifiers, affiliate accounts, referral tracking records, and conversion logs associated with that system are not accessible to Plaintiff.

**Attribution Records Exist Within Defendant-Controlled Systems**

19. In pre-suit correspondence, Defendant acknowledged that embedded URL information would contain referral credit or attribution data identifying the party seeking credit for the traffic.

20. Defendant further stated that such information could reveal who sent the messages.

21. That attribution data necessarily exists within internal affiliate tracking systems, campaign logs, or third-party traffic management platforms utilized by Defendant.

22. Those records are exclusively within Defendant's control or within the control of third-party platforms operating inside Defendant's commercial ecosystem.

23. Without early discovery, Plaintiff cannot identify:

a. The affiliate campaign responsible for the SMS traffic;

b. The affiliate account associated with the traffic;

c. The campaign owner seeking referral credit;

d. The payout or validation records tied to that traffic;

e. The aggregator or routing source associated with the message transmission.

**Time Sensitivity and Risk of Spoliation**

24. SMS routing metadata, affiliate logs, referral tracking records, and traffic validation records are typically retained for finite periods.

25. The messages at issue were transmitted several years ago, increasing the risk that relevant records may be lost or overwritten.

26. Early discovery limited to identifying affiliate campaign records, referral logs, and associated tracking data is necessary to prevent further loss of evidence.

**Narrow Scope of Requested Early Discovery**

27. Plaintiff does not seek merits discovery at this stage.

28. Plaintiff seeks narrowly tailored discovery limited to identifying:

a. Affiliate campaigns active during the relevant time period that delivered traffic to MyLiveStripClub or related VS Media properties;

b. Affiliate IDs or accounts associated with those campaigns;

c. Referral tracking logs sufficient to identify traffic source and time frame;

d. Payout or validation records confirming review or approval of such traffic;

e. The third-party platforms used to manage affiliate attribution for that traffic.

29. This discovery is necessary to identify responsible parties and preserve evidence.

**Conclusion**

30. The preserved redirect recording demonstrates that the unsolicited SMS traffic entered a structured commercial ecosystem and terminated at a VS Media–controlled endpoint.

31. Public materials reflect that the intermediate platforms operate within a monetized affiliate system that generates referral credit and attribution records.

32. The identity of the responsible sender and the associated campaign records exist within systems controlled by Defendant or third-party platforms operating within that ecosystem.

33. Without early discovery, Plaintiff cannot access the attribution records necessary to identify the responsible actor.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 18, 2026

Respectfully submitted,

/s/ Cosby Siringi

Cosby Siringi

Plaintiff, Pro Se

claims@optoutalliance.com

3011 Hwy 30 W, Ste 101 #129

Huntsville, TX 77340