IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

FEB 19 2026

Nathan Ochsner, Clerk of Court

| | § | |
|---|---|---|
| COSBY SIRINGI | § | |
| Plaintiff, | § | |
| v. | § | Case No. 4:26-cv-00509 |
| | § | Hon Keith P. Ellison |
| VS MEDIA, INC., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Cosby Siringi respectfully submits this Response in Opposition to Defendant VS Media, Inc.'s Motion to Dismiss.

## I. INTRODUCTION

Defendant moves to dismiss on multiple Rule 12 grounds, including lack of jurisdiction, improper venue, insufficient service, failure to state a claim, failure to join parties, and statutory exemptions.

- 1 -

The central premise of the Motion is that Plaintiff cannot conclusively identify which entity transmitted the unsolicited SMS messages at issue.

That argument confuses proof with pleading.

At the Rule 12 stage, Plaintiff is not required to possess internal affiliate attribution logs or campaign records. Plaintiff must plausibly allege that unsolicited commercial SMS messages were routed through a structured marketing funnel that terminated at a VS Media–operated commercial platform from which Defendant derives benefit.

The Complaint and supplemental declaration plausibly allege exactly that.

Defendant's arguments regarding internal referral data, affiliate identity, and campaign attribution raise factual issues appropriate for discovery, not dismissal.

## II. SUBJECT-MATTER JURISDICTION

Plaintiff asserts claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227.

TCPA claims arise under federal law and fall squarely within this Court's federal-question jurisdiction under 28 U.S.C. § 1331.

Defendant identifies no jurisdictional defect independent of its merits arguments. Whether Plaintiff can ultimately prove liability does not implicate subject-matter jurisdiction.

## III. PERSONAL JURISDICTION AND VENUE

The Complaint alleges that:

- Plaintiff is a Texas resident.

- Plaintiff received unsolicited commercial SMS messages on his Texas cellular phone.

- Clicking those messages initiated a multi-step redirect sequence.

- That redirect sequence terminated at **entrance.mylivestripclub.com**, a platform operated by VS Media.

- VS Media operates an affiliate-driven traffic acquisition system through which it monetizes inbound traffic.

Plaintiff preserved a screen recording dated April 16, 2022 documenting the real-time routing sequence, including intermediary domains and advertising routing through moartraffic.engine.adglare.net before final delivery to the VS Media endpoint.

At this stage, those jurisdictional allegations must be accepted as true. Defendant provides no evidence negating purposeful direction of conduct into this District.

Venue is therefore proper.

## IV. SERVICE OF PROCESS

Defendant asserts insufficient service but identifies no specific defect under Rule 4.

Defendant has appeared through counsel and filed substantive motions, demonstrating actual notice and lack of prejudice. If any technical issue existed, the proper remedy would be cure, not dismissal.

## V. LEGAL STANDARD UNDER RULE 12(b)(6)

To survive Rule 12(b)(6), a complaint must state a claim that is plausible on its face.

The Court must accept well-pleaded factual allegations as true and draw reasonable inferences in Plaintiff's favor.

A plaintiff is not required at the pleading stage to:

- Produce internal business records controlled by a defendant;

- Identify unknown third parties whose identities depend on discovery; or

- Prove agency or ratification before access to relevant documents.

The question is whether the alleged facts permit a reasonable inference of liability. They do.

## VI. PLAINTIFF HAS PLAUSIBLY ALLEGED A COMMERCIAL SMS FUNNEL TERMINATING AT A VS MEDIA PLATFORM

The Complaint and supplemental declaration allege:

1. Plaintiff received unsolicited commercial SMS messages promoting adult services.

2. The messages contained embedded links.

3. Clicking those links triggered a structured, multi-step redirect sequence.

4. The sequence included intermediary commercial domains and advertising routing infrastructure.

5. The sequence ultimately terminated at **entrance.mylivestripclub.com**.

6. mylivestripclub.com is operated and controlled by VS Media.

The preserved recording reflects that the redirect path routed through intermediary domains and advertising infrastructure, including **moartraffic.engine.adglare.net**, before delivering traffic to the VS Media endpoint.

The preserved browser history further reflects redirect URLs containing structured campaign parameters, including numeric tracking identifiers and affiliate account fields embedded within

- 4 -

"go.moartraffic.com/go.php" links. Those parameters demonstrate that the traffic moved through a managed affiliate or advertising campaign.

The identity of the affiliate account and campaign configuration associated with those identifiers is not publicly accessible and resides within the systems of the advertising intermediary and/or Defendant.

These allegations plausibly establish:

- Unsolicited commercial SMS traffic,

- Structured campaign routing,

- Termination at a VS Media–operated platform, and

- Commercial monetization within Defendant's affiliate ecosystem.

That is sufficient at the pleading stage.

## VII. DEFENDANT'S OWN STATEMENTS CONFIRM ATTRIBUTION DATA EXISTS

Pre-suit correspondence confirms that attribution data exists within Defendant's ecosystem.

Plaintiff previously provided Defendant with:

• The preserved April 16, 2022 screen recording reflecting the real-time redirect sequence from the unsolicited SMS to the VS Media endpoint; and

• A list of the SMS messages and the URLs contained in those messages.

Defendant acknowledged receipt of those materials and requested the underlying URLs in order to evaluate embedded referral parameters.

Defendant further stated that the URLs could identify who "DID send" the messages because embedded information reflects who attempted to claim referral credit, and that internal systems could identify any third-party marketer operating within its program.

These exchanges confirm that:

- The redirect chain and campaign identifiers are not speculative;

- The infrastructure includes embedded attribution parameters; and

- The relevant identification data resides within Defendant's ecosystem or its advertising intermediaries.

The absence of that internal data from the Complaint does not defeat plausibility. It confirms that discovery is necessary.

## VIII. AGENCY AND RATIFICATION ARE FACT QUESTIONS

Defendant argues that it does not itself send SMS messages and suggests that any transmission must be attributable to an unidentified third party.

Under the TCPA, liability is not limited to the entity that physically transmits a message. A seller may be liable where it authorizes, controls, or ratifies marketing conducted within its commercial ecosystem, or accepts the benefits of that marketing.

Plaintiff alleges:

- A structured affiliate marketing ecosystem,

- URL-embedded attribution parameters,

- Traffic monetization through Defendant's platform, and

- Defendant's ability to identify referral sources through internal systems.

Whether Defendant exercised control, had the right to control, or ratified affiliate conduct are factual issues dependent on internal agreements and campaign records. Those issues cannot be resolved on a Rule 12 motion.

## IX. FAILURE TO JOIN OTHER PARTIES IS NOT A BASIS FOR DISMISSAL

The possible existence of affiliates or intermediaries does not negate a claim against Defendant.

Rule 19 does not require dismissal merely because other potential tortfeasors may exist. Plaintiff plausibly alleges that SMS-generated traffic was routed into Defendant's commercial ecosystem and monetized on Defendant's platform.

## X. STATUTORY EXEMPTIONS ARE AFFIRMATIVE DEFENSES

Whether any TCPA exemption applies is an affirmative defense.

Plaintiff alleges unsolicited commercial SMS messages to a cellular phone without consent. Plaintiff is not required at the pleading stage to negate every possible exemption.

## XI. CONCLUSION

Plaintiff has plausibly alleged:

- Receipt of unsolicited commercial SMS messages,

- A structured redirect sequence documented in a preserved recording,

- Routing through managed advertising infrastructure,

- Termination at a VS Media–operated platform,

- URL-embedded attribution parameters demonstrating affiliate campaign routing, and

- Defendant's acknowledgment that internal systems can identify who "DID send" the messages.

Defendant's Motion seeks dismissal based on the absence of internal attribution data that resides within Defendant's ecosystem and is properly the subject of discovery.

Rule 12 does not require proof before discovery.

For these reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.

Dismissal at this stage would improperly collapse the distinction between pleading and proof by requiring Plaintiff to produce internal attribution data that Defendant admits exists within its own systems.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 18, 2026

Respectfully submitted,

/s/ Cosby Siringi

Cosby Siringi

Plaintiff, Pro Se

claims@optoutalliance.com

3011 Hwy 30 W, Ste 101 #129

Huntsville, TX 77340