**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

United States Courts
Southern District of Texas
FILED

FEB 27 2026

Nathan Ochsner, Clerk of Court

|  |  |
|---|---|
| COSBY SIRINGI<br><br>Plaintiff,<br><br>v.<br><br>VS MEDIA, INC.<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

Case No. 4:26-cv-00509

Hon. Keith P. Ellison

## AMENDED COMPLAINT

Plaintiff Cosby Siringi ("Plaintiff") brings this action individually against Defendant VS Media, Inc. ("Defendant"), seeking statutory damages, enhanced damages, and injunctive relief arising from Defendant's transmission, directly or through its affiliate marketing ecosystem, of unsolicited commercial text messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), and its implementing regulations. Plaintiff alleges, based upon personal knowledge as to himself and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (TCPA), and its implementing regulations.

2.    Plaintiff brings this action individually for statutory damages and injunctive relief arising from unsolicited commercial SMS messages that were routed through a structured affiliate marketing funnel terminating at a commercial platform operated by Defendant VS Media, Inc. (Defendant).

3.    Each unsolicited text message constitutes a separate violation of the TCPA. Claims under the TCPA are governed by the four year federal catch all statute of limitations set forth in 28 U.S.C. § 1658(a).

4.    The identity of the affiliate account, campaign configuration, and traffic source responsible for transmitting the unsolicited messages is maintained within Defendant's referral and tracking systems and related advertising infrastructure and is not publicly accessible. Identification of those internal records is necessary to determine the responsible sender within Defendant's commercial ecosystem.

## PARTIES

5.    Plaintiff Cosby Siringi is a natural person and a resident of Huntsville, Texas. Plaintiff is the sole subscriber and primary user of the cellular telephone number at issue.

6.    Defendant VS Media, Inc. is a commercial entity that operates adult oriented web platforms, including properties accessible through mylivestripclub.com and related domains.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law.

8.    Personal jurisdiction exists because the unsolicited SMS messages were received by Plaintiff in Texas and the resulting commercial routing activity was purposefully directed toward

Plaintiff in this District.

9.    Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred in this District.

## STATUTORY BACKGROUND

10.    The TCPA prohibits the use of an automatic telephone dialing system (ATDS) to make any call, including text messages, to a telephone number assigned to a cellular telephone service without the prior express consent of the called party.

11.    Text messages constitute calls within the meaning of the TCPA.

12.    The TCPA's implementing regulations require telemarketers to maintain and implement internal do not call procedures and to honor do not call and revocation requests.

## FACTUAL ALLEGATIONS

### The Initial Unsolicited Text

13.    On or about April 13, 2022, Plaintiff received an unsolicited commercial SMS message on his cellular telephone promoting adult services, which serves as the representative example for the redirect sequence and claims asserted in this action.

14.    Plaintiff did not provide prior express consent, written or otherwise, to receive telemarketing or promotional text messages from or on behalf of Defendant.

15.    The message contained an embedded hyperlink directing the recipient to external web content.

16. The SMS message was sent to a telephone number assigned to a cellular telephone service that Plaintiff uses and subscribes to.

17. The SMS message was sent for the purpose of advertising and promoting Defendant's commercial services.

### The Redirect Chain

18. On or about April 13, 2022, when Plaintiff clicked the embedded link contained in the unsolicited SMS message, it initiated a structured multi-step redirect sequence through multiple intermediary landing pages.

19. The redirect sequence included intermediary domains such as 18andover.la, meetkissme.com, mensexclub.com, and myhornysingles.com before routing through moartraffic.engine.adglare.net.

20. The redirect sequence ultimately terminated at entrance.mylivestripclub.com, a commercial platform operated by Defendant.

21. On April 16, 2022, Plaintiff recorded and preserved a screen capture reflecting the redirect routing described above.

22. Plaintiff's preserved browser history reflects redirect URLs containing structured campaign parameters, including numeric tracking identifiers and affiliate account fields embedded within "go.moartraffic.com/go.php" links.

23. These parameters are consistent with structured affiliate campaign routing.

24. The identity of the affiliate account and campaign configuration associated with those identifiers is not publicly accessible and resides within the referral and tracking systems of Defendant and its advertising intermediaries.

25.    The specific affiliate identifiers, referral codes, and traffic attribution data necessary to determine the responsible traffic source are maintained within Defendant's systems and related advertising infrastructure and are not accessible to Plaintiff prior to discovery.

26.    The messages were not isolated communications but part of a standardized messaging campaign. As reflected in Exhibits A and C, the messages originated from rotating numeric sender identifiers appearing in sequential numbering blocks and contained individualized tracking links unique to each transmission while maintaining a uniform message structure and format. The pooled sending numbers, automatically generated tracking parameters, and repeated standardized templates are consistent with automated transmission from stored lists rather than manual, person to person messaging.

27.    On information and belief, the messages were transmitted using an automatic telephone dialing system as defined by 47 U.S.C. § 227(a)(1), or other automated equipment that stored telephone numbers and automatically sent text messages to those numbers without human intervention. The specific dialing mechanism and configuration are within Defendant's possession and cannot be determined absent discovery.

### Notice to Defendant

28.    On April 16, 2022, Plaintiff notified Defendant through its published compliance channel that unsolicited marketing messages were being received and routed to Defendant's platform.

29.    Despite this notice, unsolicited messages continued.

30.    Plaintiff received numerous unsolicited commercial text messages during the relevant period, each of which followed a substantially similar structured redirect pattern terminating at Defendant's platform, examples of which are reflected in Exhibits A and C.

31. Defendant did not identify or terminate the traffic source responsible.

32. The preserved redirect recording and related documentation were later provided during pre-suit communications to facilitate attribution of the traffic source.

## Lack of Consent

33. Plaintiff did not provide prior express written consent, as defined under the TCPA and its implementing regulations, to receive telemarketing text messages promoting Defendant's services.

34. To the extent Defendant contends that Plaintiff later accessed Defendant's website or related platforms, any such access occurred only after the initial unsolicited message and resulting redirect chain.

35. Any subsequent website access does not retroactively create consent for the original unsolicited transmission.

36. At the time of the unsolicited text message, Plaintiff had no established business relationship with Defendant that would permit telemarketing communications.

## ARTICLE III INJURY

37. As a direct result of Defendant's conduct, Plaintiff suffered concrete injuries, including invasion of privacy, intrusion upon seclusion, lost time reviewing and documenting the messages, consumption of device data and storage, and nuisance and aggravation associated with the unwanted text communications.

38.   Plaintiff pays for his cellular service and messaging capacity, and the unsolicited messages consumed a portion of that paid service and data allocation.

39.   These injuries are real, concrete, and particularized, and are of the same kind that Congress identified as nuisance and invasion of privacy in enacting the TCPA.

40.   The harm suffered by Plaintiff is of the type the TCPA was enacted to prevent.

COUNT I

Violations of the TCPA – 47 U.S.C. § 227(b)

41.   Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

42.   Defendant, directly and through its affiliate marketing ecosystem and traffic acquisition partners, caused unsolicited commercial text messages to be transmitted to Plaintiff's cellular telephone number.

43.   The messages were transmitted using an automatic telephone dialing system, or functionally equivalent equipment that stored and automatically dialed or texted numbers from a list or database without human intervention, rather than by manual dialing.

44.   Plaintiff did not provide prior express written consent for these telemarketing messages.

45.   Each unsolicited text message sent to Plaintiff's cellular telephone constitutes a separate violation of 47 U.S.C. § 227(b).

46.   Plaintiff is entitled to an award of statutory damages of $500 per violation and up to $1,500 per violation that the Court finds to have been committed knowingly or willfully, as well as injunctive relief.

COUNT II

Violations of 47 C.F.R. § 64.1200(d)

47.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

48.     Defendant failed to implement or enforce internal procedures sufficient to prevent unsolicited telemarketing text messages within its affiliate driven marketing ecosystem, as required by 47 C.F.R. § 64.1200(d).

49.     Despite receiving specific notice in April 2022 identifying Plaintiff's number and the routing of unsolicited traffic to Defendant's platform, Defendant failed to identify or terminate the traffic source responsible, allowing further unsolicited messages.

50.     Plaintiff is entitled to statutory damages for each violation of 47 C.F.R. § 64.1200(d) and to injunctive relief requiring Defendant to implement compliant internal procedures and to cease unlawful marketing practices.

## IDENTIFICATION OF RESPONSIBLE ACTOR

51.     Identification of the responsible affiliate accounts, campaign identifiers, referral logs, traffic acquisition records, and associated device or IP level attribution for Plaintiff's traffic is within Defendant's possession, custody, or control, including data maintained by third party advertising intermediaries acting on Defendant's behalf.

52.     Plaintiff cannot access or preserve those internal attribution logs without discovery, and those records are maintained in the ordinary course of business and may be subject to routine retention and deletion policies.

53.     Determination of the specific sender and traffic source within Defendant's commercial ecosystem is capable of straightforward, ministerial determination from Defendant's referral, tracking, and affiliate management records.

54. During pre-suit communications, Defendant stated that embedded referral and tracking parameters within the redirect URLs contain information capable of identifying the traffic source associated with a specific user session or device.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant and award the following relief:

I. Statutory damages of $500 per violation of the TCPA and 47 C.F.R. § 64.1200(d).

II. Treble damages of up to $1,500 per knowing or willful violation of the TCPA.

III. Injunctive relief prohibiting Defendant and those acting on its behalf from continuing the unlawful marketing practices described herein and requiring implementation of compliant internal procedures.

IV. Pre judgment and post judgment interest as permitted by law.

V. Such further relief as the Court deems just and proper.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take immediate steps to preserve all records, referral logs, affiliate account data, campaign identifiers, redirect metadata, attribution logs, and related electronic records associated with the allegations herein, including but not limited to any such records maintained by third party advertising intermediaries, carriers, or analytics providers acting on Defendant's behalf, until this litigation, including all appeals, is fully and finally resolved.