**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| COSBY SIRINGI | § § § | |
| Plaintiff, | § | |
| v. | § § | Case No. 4:26-cv-00509 |
| | § | |
| VS MEDIA, INC. | § | Hon. Keith P. Ellison |
| | § | |
| Defendant. | § § | |

**PLAINTIFF'S MOTION TO COMPEL SUPPLEMENTAL ATTRIBUTION**
**DISCOVERY AND TO SEQUENCE DEPOSITIONS**

**TABLE OF CONTENTS**

I. Introduction..............................................................................1

II. Background.............................................................................3

III. The Voluum Evidence Directly Contradicts Defendant's Sworn Responses...........5

A. Defendant's Own Entrance Domain Operated Voluum Continuously for a Full Year...5

B. Voluum Is an Integrated Attribution Platform, Not a Generic Analytics Tool...........8

C. Voluum Is Integrated with Defendant's Own Affiliate Program and Affiliate Partner...9

D. The TUNE Deletion Establishes a Pattern of Omission...................................10

E. The Request-Response Contradiction.......................................................12

IV. Relevance to Plaintiff's TCPA Claims.....................................................17

V. Why Deposition Sequencing Is Now Procedurally Necessary............................18

VI. Relief Requested...........................................................................19

VII. Conclusion................................................................................21

Certificate of Conference......................................................................23

Certificate of Service...........................................................................24

## TABLE OF CITATIONS

**Cases:**

Braver v. NorthStar Alarm Services, W.D. Okla. 2019

**Statutes:**

47 U.S.C. Section 227

**Rules:**

Federal Rule of Civil Procedure 26(c)

Federal Rule of Civil Procedure 30(b)(6)

Federal Rule of Civil Procedure 37(a)(4)

Federal Rule of Civil Procedure 37(a)(5)

Southern District of Texas Local Rule 7.1

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This is a civil action brought under the Telephone Consumer Protection Act, 47 U.S.C. Section 227, arising from unsolicited commercial text messages routed through an affiliate marketing ecosystem to Defendant's platform. The Court previously authorized limited early attribution discovery. Defendant has served discovery responses that Plaintiff contends are evasive and incomplete. This motion seeks supplemental attribution discovery and deposition sequencing based on newly identified independently archived evidence directly contradicting Defendant's sworn discovery representations.

**STATEMENT OF ISSUES AND STANDARD OF REVIEW**

Issue One: Whether Defendant's sworn discovery responses are evasive and incomplete under Federal Rule of Civil Procedure 37(a)(4), which treats an evasive or incomplete response as a failure to respond, entitling Plaintiff to an order compelling supplemental responses and production.

Issue Two: Whether deposition sequencing is warranted under Federal Rule of Civil Procedure 26(c) to prevent unfair prejudice arising from Defendant's failure to disclose attribution-capable systems operating on its own platform throughout the relevant period.

**SUMMARY OF ARGUMENT**

Defendant swore under oath that mp_code is its only tracking parameter and that no responsive attribution systems or documents exist. Plaintiff has since identified, through thirteen independent Internet Archive captures of Defendant's own entrance domain, that a second attribution platform called Voluum operated continuously alongside mp_code throughout the entire relevant period. Eleven of those thirteen captures correspond to the same entrance landing page documented in Plaintiff's preserved video evidence. Voluum's own documentation identifies Defendant's affiliate program HackLab and Defendant's current affiliate partner CrakRevenue as official integration partners, and includes a dedicated guide for tracking SMS traffic. Defendant's own affiliate FAQ confirms that mp_code values are assigned to specific affiliate accounts through Defendant's own portal, directly contradicting the sworn representation that Defendant cannot identify any affiliate associated with the preserved pathways. Plaintiff seeks supplemental responses, production of Voluum records, a prepared corporate representative, and a fair deposition sequence.

## I. INTRODUCTION

Plaintiff Cosby Siringi respectfully moves this Court to compel Defendant VS Media, Inc. to produce supplemental discovery identifying and producing records from Voluum, a click tracking and attribution platform that Defendant operated on its own entrance domain throughout the relevant period, and to sequence depositions so that Defendant's corporate representative is deposed on attribution systems before Plaintiff sits for his deposition.

At the May 27, 2026 conference, the Court repeatedly questioned why Plaintiff considered Defendant's attribution-related responses incomplete. Plaintiff can now answer that question with independently archived evidence, not inference or speculation. The Internet Archive independently captured Defendant's own entrance domain across thirteen separate instances spanning the entire relevant period. Every single capture contains a Voluum click ID operating simultaneously alongside mp_code, the parameter Defendant swore was its only tracking mechanism. Eleven of those thirteen captures correspond to the same entrance landing page documented in Plaintiff's preserved video evidence. This is not speculation about hidden systems. It is archived operational evidence of an attribution-capable platform that Defendant never disclosed.

What has emerged from this research is not a collection of isolated technical discrepancies. It is a documented pattern. Defendant publicly operated an affiliate program called HackLab CPA, trademarked and owned by VS Media, Inc., integrated with Voluum's attribution platform, and offering Flirt4Free as a trackable affiliate offer through Voluum's own published documentation. Defendant publicly referenced TUNE infrastructure on its affiliate materials and removed those references within 72 hours of a court-ordered exchange. Defendant operated WellHello Live as a white label of Flirt4Free under a publicly documented commercial

relationship with the operator of the same WellHello ecosystem that appeared in Plaintiff's preserved routing evidence, then searched for a consumer-facing skin name rather than the underlying operator when responding to discovery. Defendant's own affiliate FAQ confirms that mp_code values are assigned to specific affiliate accounts through its affiliate portal and tied to performance statistics, yet Defendant represented it could not identify any affiliate associated with the preserved pathways. And Defendant's own entrance domain shows a separate attribution platform operating continuously alongside mp_code for a full year, never disclosed, never searched, and never produced from. The Court asked why Plaintiff considered the responses incomplete. This motion answers that question.

## II. BACKGROUND

### A. Court-Authorized Early Discovery

On March 26, 2026, this Court granted Plaintiff's Motion for Early Discovery, authorizing limited discovery for the purpose of identifying senders, routing paths, authorization relationships, and attribution information related to the unsolicited SMS messages described in the Amended Complaint. Doc. 22.

On April 28, 2026, the Court directed both parties to exchange attribution-related information. Plaintiff complied promptly, producing preserved routing evidence including videos, screenshots, URLs, and redirect path documentation. Defendant served amended interrogatory responses and responses to requests for production.

### B. Defendant's Sworn Discovery Responses

Defendant's sworn amended interrogatory responses, signed under oath by Craig Miller on April 26, 2026, stated that mp_code is Defendant's only tracking parameter, that no affiliate or

account is assigned to aid=141178, that Defendant cannot identify any third parties with access to tracking or attribution systems, and that VS Media has no responsive documents in response to each Request for Production concerning routing paths, affiliate systems, attribution, tracking parameters, and monetization systems. Defendant's counsel represented at the May 27, 2026 conference that Defendant had fully answered all discovery and that Plaintiff had presented zero evidence of attribution-capable systems.

**C. Why This Motion Is Timely**

Plaintiff could not previously raise the Voluum issue because the archived evidence was identified only after the May 27 conference, through targeted research into Defendant's publicly accessible platform infrastructure. Plaintiff brings this motion promptly upon identifying evidence that materially contradicts Defendant's prior attribution-related discovery representations. This is not a renewed version of an argument the Court has already considered. It is a new motion based on newly identified independent evidence.

Rather than substantively addressing Plaintiff's attribution-related clarification requests, Defendant repeatedly characterized the requests as dissatisfaction with already-complete responses while simultaneously continuing to press forward with Plaintiff's deposition scheduling.

## III. THE VOLUUM EVIDENCE DIRECTLY CONTRADICTS DEFENDANT'S SWORN RESPONSES

Defendant's counsel represented at the May 27 conference that Defendant had answered every discovery request within the parameters of the law. A review of those answers against the evidence now before the Court reveals a consistent pattern. Each response was carefully

constructed to address a narrower question than the one actually asked. Plaintiff asked who received attribution credit. Defendant answered that SMS marketing is not permitted. Plaintiff asked what systems track and attribute traffic. Defendant identified mp_code and nothing else. Plaintiff asked about myhornysingles.com and its parent. Defendant searched those specific names and reported no match, without addressing the underlying operator with whom Defendant maintains a direct white label commercial relationship. Plaintiff asked about third parties with access to tracking or routing systems. Defendant stated it does not know who those parties would be, while operating an affiliate portal that assigns tracking codes to specific affiliate accounts and tracks their performance statistics. In each instance, the answer was technically responsive to a narrower version of the question while avoiding the substance of what was actually asked. The Federal Rules treat evasive or incomplete responses as a failure to respond. Rule 37(a)(4). The newly identified Voluum evidence now demonstrates that those responses were not merely narrow. They were incomplete in ways that Defendant's own publicly accessible infrastructure makes demonstrably clear.

## A. Defendant's Own Entrance Domain Operated Voluum Continuously for a Full Year

The Internet Archive independently captured Defendant's platform entrance URL, entrance.mylivestripclub.com, across at least thirteen separate instances spanning November 3, 2021 through September 8, 2022. Every single archived capture contains a Voluum click ID parameter operating simultaneously with mp_code. Eleven of the thirteen captures correspond to the same entrance landing page documented in Plaintiff's preserved video evidence of the sessions at issue, directly linking Voluum's tracking infrastructure to the specific preserved pathways underlying Plaintiff's claims.

Defendant's own affiliate FAQ confirms that mp_code is an affiliate-assigned tracking code created by individual affiliates through Defendant's affiliate portal for the purpose of segmenting traffic statistics by promotional material. The FAQ instructs affiliates to create unique mp_codes for each piece of promotional material and directs questions to affiliates@flirt4free.com. This confirms that mp_code values in Defendant's system are tied to specific affiliate accounts and promotional materials, and that Defendant's affiliate portal contains the account data, tracking code assignments, and performance statistics necessary to identify which affiliate account is associated with any given mp_code value. Defendant's sworn response that it cannot identify any affiliate, publisher, or account associated with the preserved pathways is inconsistent with a system that assigns mp_codes to specific affiliate accounts and tracks their performance statistics.

The archived captures reflect multiple distinct campaigns, multiple identified traffic sources, and multiple device types, demonstrating that Voluum was not a one-time test but a continuous operational component of Defendant's platform throughout the relevant period. The complete list of archived captures with associated parameters is set forth in Exhibit B.

These captures were made independently by the Internet Archive. They are not subject to challenge as fabricated or modified. They reflect Defendant's own platform operating with Voluum tracking embedded in its URL structure across at least four separately identified campaigns spanning the entire relevant period.

Defendant has repeatedly represented across two sworn discovery responses, two court conferences, a motion for protective order opposition, a sanctions motion, and ongoing deposition scheduling correspondence that mp_code is its only tracking parameter and that no

additional responsive attribution systems exist. That representation has been Defendant's consistent position at every stage of this proceeding.

A tracking parameter is not a tracking system. mp_code is a value. It must be generated by something, stored somewhere, associated with a session, connected to a conversion event, tied to a traffic source, and reported in some format to be commercially useful. A parameter cannot generate itself, store itself, or report on itself. It requires a platform.

The thirteen independently archived captures of Defendant's own entrance domain show mp_code appearing in every single URL alongside a second parameter, voluum_click_id, identifying a separate attribution platform operating simultaneously. Voluum is that platform. It generates the click ID. It stores the session. It connects the click to the conversion. It records the traffic source. It produces the reports. mp_code does not exist in isolation. It exists inside Voluum.

Defendant swore mp_code is the only tracking parameter. The archived URLs from Defendant's own platform show mp_code and Voluum operating together in the same URL structure across thirteen separate captures spanning a full year. That is not a dispute about whether Plaintiff is satisfied with Defendant's answers. That is a documented factual contradiction between Defendant's sworn representations and Defendant's own archived platform data.

## B. Voluum Is an Integrated Attribution Platform, Not a Generic Analytics Tool

Voluum is not a passive analytics tag. Voluum's own published documentation describes it as a comprehensive attribution and click tracking platform that stores click data and session identifiers, tracks conversions and payout events, records traffic sources and campaign

performance by campaign and affiliate, generates searchable conversion reports with payout and revenue fields, and supports server-to-server postback integrations with affiliate networks enabling automatic transmission of conversion data.

Critically, Voluum's published documentation includes a dedicated integration guide titled 'Tracking SMS Traffic with Voluum,' which describes precisely how Voluum tracks SMS-based marketing campaigns, monitors click-through rates and conversion rates from SMS traffic, and records additional visit characteristics from SMS gateway providers. This directly refutes any characterization of Voluum as unrelated to the SMS traffic at issue. Voluum is a platform designed to track, among other things, the same category of traffic that gave rise to Plaintiff's claims.

## C. Voluum Is Integrated with Defendant's Own Affiliate Program and Affiliate Partner

Voluum's published affiliate network integration documentation lists HackLab as an official integration partner with a dedicated integration page. HackLab CPA is VS Media, Inc.'s own affiliate program, as confirmed by the archived HackLab CPA Terms and Conditions identifying VS Media, Inc. as the 'Company.' Defendant's own affiliate program has a published Voluum integration.

Voluum's documentation also lists CrakRevenue as an official integration partner. CrakRevenue's own website currently lists Flirt4Free, the Defendant's platform, as an active affiliate offer with 'Advanced Stat Reporting' described as a platform feature. CrakRevenue's integration with Voluum, combined with its current promotion of Defendant's platform, means that the affiliate routing ecosystem connected to Defendant was specifically integrated with the same attribution platform operating on Defendant's entrance domain.

The Voluum infrastructure therefore does not appear isolated or unrelated to the preserved pathways. Publicly available integration materials show Voluum operating in conjunction with affiliate-routing, smartlink, conversion-tracking, SMS-tracking, and payout-attribution ecosystems that include both Defendant's own affiliate program and Defendant's current affiliate partner. These integration relationships materially support Plaintiff's position that responsive attribution information exists within systems not previously identified in Defendant's sworn discovery responses.

As of the date of this filing, the domain hacklabcpa.com redirects directly to affiliates.flirt4free.com, Defendant's current affiliate portal. Voluum's published integration documentation continues to reference HackLab by name and logo, reflecting that the underlying affiliate tracking infrastructure was never changed, only the public-facing domain. This redirect demonstrates continuous operational identity between the HackLab CPA affiliate system and Defendant's current affiliate operations, directly contradicting any suggestion that HackLab was a separate or discontinued system unrelated to Defendant's current platform.

**D. The TUNE Deletion Establishes a Pattern of Omission**

The Voluum issue does not exist in isolation. Prior to the April 28, 2026 court-ordered attribution exchange, Defendant's publicly accessible Flirt4Free affiliate materials explicitly stated that 'all of your traffic will be logged onto our TUNE platform,' that affiliates could view 'conversions, user data, and traffic data,' and that Defendant could configure postbacks to transmit conversion data to affiliates. Plaintiff preserved these materials before the exchange. Within 72 hours of the court-ordered exchange date, those TUNE references were removed from Defendant's affiliate materials. Plaintiff preserved before-and-after screenshots of that deletion, already filed as an exhibit in this case. (See Exhibit A.)

The deletion was not limited to platform name references. The April 28, 2026 version of Defendant's affiliate FAQ used "aff_sub" as the example tracking parameter, a parameter name native to the TUNE platform. The May 1, 2026 version replaced that same example with "tracking_code," a generic term with no visible connection to any specific platform. Defendant did not merely remove the TUNE name. It simultaneously scrubbed the parameter terminology associated with TUNE and replaced it with neutral language. This concurrent substitution of both the platform name and its associated parameter terminology confirms the deletion was deliberate and targeted, not a routine content update.

Defendant's amended discovery responses did not identify TUNE, HasOffers, or Voluum as attribution-capable systems. Defendant did not state whether any of these systems were searched. At the May 27 conference, the Court questioned why Plaintiff considered the responses incomplete. The archived Voluum evidence now answers that question directly: Defendant operated at minimum one additional attribution-capable platform throughout the relevant period while representing to this Court that no such systems existed. Voluum is the system whose continuous presence in Defendant's own archived entrance URLs makes that representation demonstrably false.

The removal of TUNE references and the concurrent migration of HackLab CPA's domain to affiliates.flirt4free.com are significant together. (See Exhibit A; Exhibit D, Component 2.) TUNE is the attribution platform used by CrakRevenue, Defendant's current affiliate partner. Defendant's affiliate materials publicly referenced TUNE before those references were removed within 72 hours of the court-ordered attribution exchange. That removal eliminated a publicly visible connection between Defendant's affiliate infrastructure and CrakRevenue's TUNE-based tracking ecosystem. Simultaneously, the migration of hacklabcpa.com to affiliates.flirt4free.com,

while altering the public-facing domain, left the underlying Voluum-integrated affiliate tracking infrastructure unchanged. Voluum's documentation continues to reference HackLab by name and logo. (See Exhibit D, Component 1.) The internal architecture never changed. Taken together, the removal of TUNE references reduced visible connections to CrakRevenue's attribution ecosystem while the domain migration confirmed the continuous operational identity of HackLab CPA and Defendant's current affiliate operations, two developments that together raise substantial questions about the completeness of Defendant's attribution-related disclosures.

### E. The Request-Response Contradiction

The following examples are illustrative, not exhaustive. Defendant served responses to fourteen interrogatories and fourteen requests for production. Each response followed the same pattern of evasion and non-responsiveness described above. The seven examples below are representative of that pattern across the full set of responses.

The following comparison illustrates the specific gaps between what Plaintiff requested, what Defendant answered, and why the answers remain incomplete:

### 1. Attribution and Referral Credit

**Request:**

Plaintiff requested information sufficient to identify who received attribution, referral, conversion, or payout credit associated with the preserved traffic pathways.

**Response:**

Defendant responded that it does not permit affiliates to use SMS marketing.

**Why Incomplete:**

Whether SMS was permitted by policy does not answer whether any affiliate, publisher, media buyer, intermediary routing structure, campaign, or conversion system received attribution or payout credit for traffic that actually arrived at Defendant's platform. The Voluum platform operating on Defendant's entrance domain was recording click and traffic source data for exactly those purposes throughout the relevant period.

## 2. Attribution-Capable Systems

### Request:

Plaintiff requested information about systems capable of storing or reporting routing, attribution, referral, campaign, conversion, or payout information associated with the preserved pathways.

### Response:

Defendant stated no additional responsive records existed and did not identify TUNE, HasOffers, Voluum, HackLab CPA records, affiliate dashboards, conversion reports, or postback systems.

### Why Incomplete:

Defendant's own archived entrance domain shows Voluum operating continuously for a full year. Voluum's own documentation identifies both HackLab and CrakRevenue as official integration partners. Defendant's affiliate materials previously referenced TUNE publicly. None of these systems were identified in Defendant's responses.

## 3. Intermediary Routing Systems

### Request:

Plaintiff requested routing and attribution information for preserved intermediary pathways including go.moartraffic.com and related tracking structures.

**Response:**

Defendant addressed only limited identifiers and omitted discussion of intermediary routing systems reflected in Plaintiff's preserved evidence.

**Why Incomplete:**

Defendant's own archived entrance URLs capture utm_term values identifying specific referral traffic sources, precisely the intermediary routing information Plaintiff requested. Voluum stores that data. Defendant never disclosed it.

**4. Monetization and Conversion Systems**

**Request:**

Plaintiff requested information concerning systems associated with monetized referral traffic, conversion attribution, and payout tracking.

**Response:**

Defendant stated no responsive documents existed.

**Why Incomplete:**

Voluum is specifically designed to track conversions, record payouts, generate conversion reports with payout and revenue fields, and transmit conversion data through postbacks. Defendant's own platform operated Voluum for a full year. CrakRevenue currently describes advanced stat reporting as a feature of Defendant's

affiliate offer. The monetization and conversion tracking infrastructure exists and was never disclosed.

## 5. Search Scope and Methodology

### Request:

Plaintiff requested that Defendant describe how attribution is determined within its systems for traffic generated through affiliate links, including how identifiers such as aid=141178 are tracked and credited, and identify all third parties with access to tracking or attribution systems.

### Response:

Defendant described attribution mechanics in detail, explaining how mp_code-based approved accounts receive registration credit within its systems, while simultaneously stating it could not identify anyone associated with Plaintiff's preserved identifiers and could not identify any third parties because it did not know who those parties would be.

### Why Incomplete:

Plaintiff never provided Defendant with an mp_code value associated with the preserved pathways. Defendant's responses pivoted to describing attribution through mp_code-based approved accounts while simultaneously claiming it could not identify any responsive information associated with Plaintiff's actual preserved identifiers, which included aid=141178, t=41338, and the routing pathways reflected in Plaintiff's produced evidence. The newly identified Voluum evidence raises the question of what systems, identifiers, campaigns, and attribution-capable records

were actually searched before Defendant represented that no responsive attribution information existed. Defendant's own response acknowledges that attribution systems exist and that approved organizations receive credit for registrations within those systems. That acknowledgment is inconsistent with the broader representation that no responsive attribution information exists concerning the preserved pathways.

## 6. Search Scope and Operational Overlap

### Request:

Plaintiff requested identification of all affiliates, publishers, accounts, campaigns, and entities associated with the preserved routing pathways, including intermediary systems reflected in Plaintiff's evidence.

### Response:

Defendant represented that neither myhornysingles.com nor its parent company Karneolis Ltd. appeared as an affiliate, publisher, account, campaign, offer, or program within Defendant's systems.

### Why Incomplete:

Defendant represented that neither myhornysingles.com nor Karneolis Ltd. appeared as an affiliate, publisher, or account in its systems. However, publicly available affiliate marketing materials published by MOAR Traffic in December 2022 identify both WellHello and myhornysingles.com as MOAR Traffic's own brands simultaneously. Defendant simultaneously operates WellHello Live as a white label implementation of its Flirt4Free platform under a direct commercial agreement with the WellHello operator. A white label arrangement means Defendant built, hosts, and

maintains the technical infrastructure that WellHello Live operates on. Searching for myhornysingles.com or Karneolis Ltd. in an affiliate database without searching for the underlying operator of the WellHello ecosystem and its direct white label relationship with Defendant's platform is not a complete search. The absence of a consumer-facing skin name in an affiliate database does not establish the absence of a direct commercial relationship with the entity operating that skin. Defendant's own white label relationship with the WellHello operator is precisely the kind of operational relationship that the preserved routing pathways reflect and that responsive attribution searches should have encompassed.

**7. Knowledge of Routing Through Defendant's Own Commercial Partner**

**Request:**

Plaintiff requested identification of all persons or entities that received attribution or credit for traffic associated with the preserved pathways and provided documentary evidence showing the routing chain including MyHornySingles, moartraffic.engine.adglare.net, and Defendant's entrance domain.

**Response:**

Defendant stated it cannot determine the identities requested other than information provided by Plaintiff himself, and further represented that based on Plaintiff's evidence none of the identified parties had any right or authority to access any website owned or operated by VS Media.

**Why Incomplete:**

The routing chain Plaintiff provided shows traffic moving through MyHornySingles, which publicly available MOAR Traffic affiliate materials confirm is one of MOAR Traffic's own brands alongside WellHello. Defendant simultaneously operates WellHello Live as a white label implementation of its Flirt4Free platform under a direct commercial agreement with the WellHello operator. Defendant therefore reviewed routing evidence passing through its own white label commercial partner's ecosystem and represented that none of those parties had any right or authority to access its platform. That representation is irreconcilable with the existence of a direct white label agreement between Defendant and the operator of the WellHello ecosystem through which Plaintiff's preserved routing pathways passed. Defendant's response to this interrogatory is not merely incomplete. It affirmatively mischaracterizes the commercial relationship reflected in Plaintiff's own evidence.

## IV. RELEVANCE TO PLAINTIFF'S TCPA CLAIMS

Flirt4Free, operated by Defendant VS Media, Inc., is one of the longest running adult cam platforms in the industry, having operated an affiliate program since 1996. Defendant's affiliate program offers commissions to publishers on a pay per lead, pay per signup, and revenue share basis, confirming that Defendant's business model depends on affiliates driving traffic to its platform and that attribution systems capable of tracking and compensating that traffic are central to its commercial operations.

The relevance of these systems is not merely technical. Plaintiff's TCPA claims concern unsolicited commercial traffic routed through affiliate and monetization systems before arriving at Defendant's platform. Attribution-capable systems such as Voluum, TUNE, postback integrations, campaign tracking systems, and affiliate reporting systems are the precise

mechanisms through which referral credit, conversion attribution, traffic routing, and monetization relationships are recorded. Those records are directly relevant to identifying who received credit for the traffic, how the traffic was routed, and what entities participated in or benefited from the preserved pathways at issue.

Courts have recognized that a party may be vicariously liable under the TCPA where it accepted and benefited from leads generated by TCPA-violating affiliates, particularly where it maintained systems capable of tracking and compensating those affiliates for the traffic they generated. See Braver v. NorthStar Alarm Services (W.D. Okla. 2019) (granting summary judgment for plaintiff where defendant received and paid for leads generated by TCPA-violating marketer). The discovery Plaintiff seeks, specifically, who received attribution and payout credit for traffic that arrived at Defendant's platform through the preserved pathways, goes directly to the core of that vicarious liability theory.

The Voluum records Plaintiff seeks are not peripheral to this inquiry. They are the records most likely to identify which affiliate accounts, campaigns, and traffic sources were credited and compensated for delivering traffic through the preserved pathways to Defendant's platform. Voluum stores click data, traffic source identifiers, conversion events, payout records, and campaign-level attribution data. Defendant operated Voluum throughout the relevant period. Defendant never disclosed it. That gap is the precise subject of this motion.

### V. WHY DEPOSITION SEQUENCING IS NOW PROCEDURALLY NECESSARY

Deposition sequencing is no longer simply a matter of fairness. It is procedurally required because the newly identified Voluum evidence fundamentally changes the attribution-discovery landscape that existed at the May 27 conference.

Plaintiff prepared for deposition based on Defendant's sworn position that mp_code was essentially the only attribution-related mechanism associated with the preserved pathways and that no additional responsive attribution systems or records existed. Plaintiff has now identified independently archived evidence demonstrating that Defendant operated an additional attribution-capable tracking platform, Voluum, continuously throughout the relevant period on the same entrance pathways documented in Plaintiff's preserved evidence.

Following the May 27 conference, Defendant asserted that the Court required Plaintiff's deposition to occur by June 26, 2026. Plaintiff is unaware of any order or transcript language imposing that deadline.

Requiring Plaintiff to sit for deposition before Defendant supplements its attribution discovery and before Defendant's Rule 30(b)(6) representative is examined concerning Voluum would create a one-sided discovery record built on materially incomplete attribution disclosures. Defendant would have the opportunity to examine Plaintiff about routing, attribution, and monetization issues while retaining undisclosed records in Voluum that may directly bear on those same issues. That is precisely the imbalance the Court's May 27 directive, that both sides be deposed under oath, was designed to prevent.

Plaintiff does not refuse to be deposed. Plaintiff requests that the Court order the following sequence: (1) Defendant supplements its attribution discovery responses as described herein; (2) Defendant produces responsive Voluum records; (3) Defendant produces a Rule 30(b)(6) representative prepared to testify about Voluum, TUNE, HackLab, and the attribution systems identified herein; and (4) Plaintiff's deposition then proceeds with the benefit of those disclosures and the corporate representative's sworn testimony. This sequence is consistent with the Court's reciprocal deposition directive and the basic principle that a party should not be

locked into deposition testimony before having the opportunity to review material attribution records that the opposing party failed to disclose.

On June 1, 2026, Defendant noticed Plaintiff's deposition for a second time without Plaintiff's agreement and without responding to Plaintiff's outstanding meet and confer communication, further demonstrating the need for Court intervention on deposition sequencing.

**VI. RELIEF REQUESTED**

Plaintiff does not seek wholesale production of Defendant's entire affiliate ecosystem or all platform data. Plaintiff seeks only records sufficient to identify attribution, referral, routing, conversion, payout, and monetization information associated with the preserved pathways and campaigns identified herein. Specifically, Plaintiff respectfully requests that the Court order:

**A. Supplemental Interrogatory Responses**

Defendant shall serve sworn supplemental responses identifying: (1) whether Voluum was used as a tracking or attribution platform on Defendant's platform during the relevant period; (2) what systems, custodians, and methods were used to search for responsive attribution information, and specifically whether Voluum, TUNE/HasOffers, and HackLab CPA systems were searched; (3) the identity of all campaigns, traffic sources, and affiliate accounts reflected in Defendant's Voluum account during July 2021 through December 2023, including utm_campaign values 13904, 13143, 13760, and 13830; and (4) whether any affiliate, publisher, intermediary, or third party received attribution, referral, conversion, or payout credit for traffic associated with Plaintiff's preserved pathways based on records in Voluum, TUNE, HackLab CPA, or any other attribution-capable system.

**B. Production of Voluum and Attribution Records**

Defendant shall produce non-privileged records from its Voluum account sufficient to show click data, campaign data, traffic source data, conversion data, payout or revenue data, and affiliate attribution data associated with the campaigns identified in the archived captures and with Plaintiff's preserved pathways during the relevant period.

## C. Rule 30(b)(6) Corporate Representative

Defendant shall produce a Rule 30(b)(6) corporate representative fully prepared to testify about: Defendant's use of Voluum and TUNE/HasOffers throughout the relevant period; the campaigns reflected in the archived entrance domain captures; whether Voluum was searched in connection with Plaintiff's discovery requests and if not, why not; HackLab CPA's integration with Voluum; CrakRevenue's relationship with Defendant's platform and the attribution data associated with that relationship; the removal of TUNE references from Defendant's affiliate materials within 72 hours of the April 28, 2026 court-ordered exchange; and the existence and content of any responsive Voluum records.

## D. Deposition Sequencing

Plaintiff's deposition shall occur only after: (1) Defendant has served the supplemental interrogatory responses described above; (2) Defendant has produced responsive Voluum records; and (3) Plaintiff has had a reasonable opportunity to conduct the Rule 30(b)(6) deposition on attribution systems. This sequencing is consistent with the Court's May 27, 2026 directive that both sides be deposed under oath and ensures that Plaintiff's deposition testimony is not locked in before material attribution disclosures are made.

## VII. CONCLUSION

At the May 27 conference, the Court questioned why Plaintiff considered Defendant's attribution responses incomplete. The archived Voluum evidence now answers that question with independent proof, not inference. Defendant's own entrance domain, archived thirteen times across a full year by the Internet Archive, shows a separate attribution-capable platform operating continuously alongside mp_code throughout the relevant period, a platform Defendant never identified, never said it searched, and never produced records from.

Eleven of those thirteen captures correspond to the same landing page documented in Plaintiff's preserved videos. Voluum's own documentation identifies Defendant's affiliate program HackLab and Defendant's affiliate partner CrakRevenue as official integration partners. Voluum has a dedicated guide for tracking SMS traffic. Defendant previously referenced TUNE publicly, then removed those references within 72 hours of a court-ordered exchange, and then represented to this Court that no attribution systems existed beyond mp_code.

Plaintiff seeks a narrow remedy: supplemental responses, Voluum records, a prepared corporate witness, and a fair deposition sequence. The Court authorized early discovery precisely to answer the question of who routed, attributed, and monetized the traffic at issue. The Voluum records are the most direct source of that answer. Plaintiff respectfully requests that the Court grant this motion in full.

Dated: June 1, 2026

Respectfully submitted,

*/s/ Cosby Siringi*
COSBY SIRINGI
Plaintiff, Pro Se
claims@optoutalliance.com
3011 Hwy 30 W, Ste 101 #129
Huntsville, TX 77340

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.1, on May 30, 2026, Plaintiff conferred with Defendant's counsel by email regarding the relief requested in this motion, specifically requesting that Defendant advise whether it would agree to supplement its attribution discovery responses to address previously undisclosed attribution-capable systems. Plaintiff requested a response by Sunday May 31, 2026. Defendant's counsel did not respond to that communication. Instead, on Monday June 1, 2026, Defendant's counsel noticed Plaintiff's deposition for a second time without Plaintiff's agreement and without providing any dates for Defendant's own corporate representative deposition, despite the Court's reciprocal deposition directive. Defendant opposes the relief requested herein.

Dated: June 1, 2026

Respectfully submitted,

*/s/ Cosby Siringi*
COSBY SIRINGI

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was served on all counsel of record on June 1, 2026, by electronic filing through the Court's CM/ECF system.

Dated: June 1, 2026

Respectfully submitted,

*/s/ Cosby Siringi*
COSBY SIRINGI